**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ARIEL PROCTOR**,

      Plaintiff,

v.                                                                          Case No. 8:26-cv-00507-WFJ-NHA

**ORDELL MCCREA-HINDS** and
**SOUTH SHORE**
**TRANSPORTATION COMPANY,**

      Defendants.

_____/

## <u>ORDER</u>

Before the Court is Plaintiff Ariel Proctor's Motion to Remand. Dkt. 11. Defendant South Shore Transportation Company ("South Shore") has responded in opposition. Dkt. 20. As explained below, Plaintiff's Motion to Remand is denied.

## BACKGROUND

This dispute centers around a car crash in Manatee County, Florida. Dkt. 1-1 ¶¶ 6, 10. On January 16, 2024, Plaintiff alleges that Defendant Ordell McCrea-Hinds collided with Plaintiff's vehicle, leading to bodily injuries. *Id.* ¶ 13. At the time of the crash, Defendant McCrea-Hinds was operating his vehicle with the permission and consent of Defendant South Shore. *Id.* ¶ 9.

On November 18, 2025, Plaintiff filed an initial complaint in the Circuit Court for the Twelfth Judicial Circuit in and for Manatee County, Florida. Dkt. 1-3

(showing state court docket sheet). On January 22, 2026, Plaintiff filed an Amended Complaint against Defendants, asserting a negligence claim against Defendant McCrea-Hinds and a vicarious liability claim against Defendant South Shore. Dkt. 1-1 ¶¶ 12–16. The Amended Complaint alleges that Plaintiff Proctor is a resident of Manatee County, Florida, *id.* ¶ 2, Defendant McCrea-Hinds is a resident of Manatee County, Florida, *id.* ¶ 3, and Defendant South Shore is a foreign profit corporation lawfully conducting business in Florida, *id.* ¶ 4.

On or about January 24, 2026, Plaintiff served Defendant South Shore with the Amended Complaint, Dkt. 11 at 2, and Defendant South Shore answered on February 2, 2026. *See* Dkt. 1-2 (showing state court answer). To date, Defendant McCrea-Hinds has not been personally served despite Plaintiff's attempts to do so. Dkt. 11 at 2. Notably, prior to this case being removed to this Court, the state circuit court signed an order extending the time to serve Defendant McCrea-Hinds by 120 days to allow for substitute service via the Secretary of State. *See* Dkt. 11 at 6 (showing state court order granting Plaintiff's *ex parte* motion for extension of time to effectuate service of process on Defendant McCrea-Hinds); Dkt. 1-3 at 1. As such, the state court deadline to serve Defendant McCrea-Hinds is on or around July 16, 2026. Dkt. 11 at 2.

On February 23, 2026, Defendant South Shore filed a Notice of Removal in this Court, asserting diversity jurisdiction. *See* Dkt. 1. Plaintiff now files a motion

for remand, arguing that Defendant South Shore's "snap removal" before Defendant McCrea-Hinds has been served is an improper attempt to avoid the "forum defendant rule" under 28 U.S.C. § 1441(b)(2). Dkt. 11 at 3–4. On April 10, 2026, the Court ordered Plaintiff to file a status report outlining whether it fully complied with Florida law regarding service through the Secretary of State. Dkt. 24. Plaintiff complied by filing a service of process acceptance letter from the Florida Secretary of State and a status report. Dkts. 25, 27. Defendant South Shore responded in opposition. Dkt. 26.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant may remove a civil action filed in state court to federal court when the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). A federal court can decide a case under its diversity jurisdiction if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Parties are "complete[ly] divers[e]" when the plaintiff is not domiciled in the same state as any defendant. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994). A removing defendant bears the burden of proving the existence of federal jurisdiction. *See Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Because removal from a state court constitutes an infringement upon state sovereignty, the

3

removal requirements must be strictly construed, and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

Additionally, when removal rests on diversity jurisdiction, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This so-called "forum-defendant rule," *Goodwin v. Reynolds*, 757 F.3d 1216, 1218 (11th Cir. 2014), means that removal based on diversity jurisdiction is only proper if there is both complete diversity, the requisite amount in controversy is met, and no defendant is a citizen of the forum state—here, Florida.

## DISCUSSION

As an initial matter, there is no dispute that diversity jurisdiction exists, as the two parties who have appeared in this action—Plaintiff Proctor and Defendant South Shore—are completely diverse, and the amount in controversy exceeds $75,000. Dkt. 20 at 1; Dkt. 1-1 ¶¶ 13, 16 (showing Plaintiff suing for damages over $100,000). Instead, the heart of this motion to remand centers on two issues: whether Defendant South Shore snap removed this action to federal court, Dkt. 11 at 3, and whether Plaintiff complied with Florida's statutory requirements for substituted service. Dkt. 26 at 2. For the reasons discussed below, the Court finds that remand to the state

4

court is not warranted because Plaintiff failed to properly effectuate substitute service.

"A snap removal occurs when a defendant quickly removes an action to federal court before service of process on a forum defendant, whose presence in the action would prevent such removal under § 1441(b)(2)." *Liberty Mut. Ins. Co. v. Orlando Museum of Art, Inc.*, No. 6:24-CV-2180-PGB-RMN, 2025 WL 559275, at *2 (M.D. Fla. Feb. 20, 2025) (citing *Jakob v. JP Morgan Chase Bank, N.A.*, No. 5:23-CV-664-JSM-PRL, 2023 WL 11256436, at *2 (M.D. Fla. Dec. 21, 2023)).

Importantly, there is no binding Eleventh Circuit precedent approving of snap removals. To date, there is only one Eleventh Circuit opinion addressing this issue, and the court expressed strong skepticism of snap removals, albeit in dicta. *See Goodwin*, 757 F.3d at 1220–21. When considering other district courts in this circuit, a survey of the case law on the validity of snap removals shows that courts are "hopelessly divided on the issue." *Sunbelt Rentals, Inc. v. Cox*, No. 2:24-CV-947-JES-KCD, 2024 WL 5049592, at *5 (M.D. Fla. Dec. 10, 2024) (collecting cases on the split); *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1268 (M.D. Fla. 2009) ("Courts have been divided in their application of Section 1441(b)."); *Kelly v. Aylstock*, No. 3:25-CV-1947-TKW-ZCB, 2026 WL 267023, at *6–7 (N.D. Fla. Feb. 2, 2026) (collecting cases on the split and discussing precedent from other circuits); *Cuble v. UCB, Inc.*, No. 1:22-CV-02688-LMM, 2022 WL 20689736, at *3

(N.D. Ga. Sept. 19, 2022) (collecting cases on the split and discussing precedent from other circuits); *Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1378 (N.D. Ga. 2018) (discussing the two competing approaches taken by district courts: the "prevent[ing] gamesmanship" approach and the "plain language" approach).

Focusing on the dicta in *Goodwin*, the appellate court conceded that the snap removal issue was not directly before it, but "nevertheless conclude[d] that [d]efendants' right of removal, if any, was not at the core of what the removal statute protects." *Goodwin*, 757 F.3d at 1221. The court further explained:

> The forum-defendant rule clearly contemplates Plaintiff's ability to defeat Defendants' purported right of removal in this case. It is undisputed that if Reynolds had been served before Fikes and Precoat removed this case, the forum-defendant rule would have barred removal. The only reason this case is in federal court is that the non-forum defendants accomplished a pre-service removal by exploiting, first, Plaintiff's courtesy in sending them copies of the complaint and, second, the state court's delay in processing Plaintiff's diligent request for service. Defendants would have us tie the district court's hands in the face of such gamesmanship on the part of Defendants. Moreover, their argument, if accepted, would turn the statute's "properly joined and served" language on its head.

*Id.* The circuit court then considered the purpose of § 1441(b)(2)'s "properly joined and served" language and found that the goal was to prevent gamesmanship by plaintiffs who might, for example, name a forum defendant they never intended to serve simply to prevent removal. *Id.* (citation omitted). Thus, the court reasoned that preventing gamesmanship is a two-way street—that is, the statutory language should

not support a result where a *defendant's* gamesmanship can prevent a district court from remanding the case. *Id.* Following *Goodwin*, courts in the Middle District of Florida seem to agree that "snap removals undermine the purpose of the forum defendant rule" and should not be allowed. *Liberty Mut.*, 2025 WL 559275, at *3 (quoting *Jakob*, 2023 WL 11256436, at *2); *see also Jakob*, 2023 WL 11256436, at *2; *Wolfe v. Schindler Elevator Corp.*, No. 8:14-CV-2448-T-24, 2014 WL 6470698, at *3 (M.D. Fla. Nov. 17, 2014).

Here, the Court agrees with *Goodwin*'s persuasive dicta concerning the prevention of gamesmanship and finds that Defendant South Shore's conduct is distinguishable from the facts in *Goodwin*. Unlike the defendants in *Goodwin*, there is nothing in the record showing that South Shore immediately removed the case after receiving courtesy copies of the complaint from Plaintiff. Nor is there any evidence that South Shore exploited the state court's delay in processing Plaintiff's diligent request for an extension to service. Instead, the underlying record shows South Shore filed an answer to the Amended Complaint in the state court, Dkt. 1-2, and even began to participate in discovery. *See* Dkt. 1-3 (showing interrogatories, requests for admissions, and requests for production). It was only after months of failed attempts to serve Defendant McCrea-Hinds that South Shore finally removed the case to federal court. Dkt. 11 at 2; Dkt. 27 ¶¶ 1–5 ("Between November 2025 and late February 2026, counsel for Plaintiff retained multiple process server

companies to assist in locating and serving Defendant Ordell McCrea-Hinds. During this time, the respective process servers worked diligently to locate Defendant Hinds, to no avail."). In short, the Court cannot find any gamesmanship in South Shore's actions that would warrant a remand to the state court.

Turning to substitute service, Plaintiff avers that in early March 2026 (after this case was removed to federal court), "Plaintiff began the process of obtaining service via the Florida Secretary of State on behalf of Defendant [McCrea-]Hinds." Dkt. 27 ¶ 5. On March 30, 2026, the Florida Secretary of State accepted service on behalf of Defendant McCrea-Hinds. Dkt. 25 at 3. As such, Plaintiff argues that this case should be remanded for a lack of subject matter jurisdiction. Dkt. 27 ¶ 7. South Shore responds, contending that Plaintiff's failure to comply with the strict requirements necessary to perfect substitute service on Defendant McCrea-Hinds via the Secretary of State means remand should be denied. Dkt. 26 at 3.

Under Fla. Stat. § 48.171, substituted service is authorized when a plaintiff's claim arises out of "any [motor vehicle] accident or collision occurring within the state," and the defendant operator of the vehicle becomes a nonresident or conceals his whereabouts. When using substituted service under section 48.171, a plaintiff "must strictly comply with section 48.161, which sets forth the method of substituted service of process." *Hernandez v. State Farm Mut. Auto. Ins. Co.*, 32 So. 3d 695,

8

698 (Fla. 4th DCA 2010)[1]; *see also InClaim, LLC v. Structural Wrap*, LLC, 413 So. 3d 251, 255 (Fla. 3d DCA 2025) ("Fundamental notions of due process require strict compliance with statutes authorizing substituted or constructive service in order to confer jurisdiction.").

Under section 48.161, this process entails (i) sending a notice that substitute service has occurred through Florida's Secretary of State and a copy of the process to the defendant by registered mail, or by certified mail with a return receipt requested, to the defendant's last known physical address; (ii) emailing the party a copy of the notice of service if the parties "recently and regularly" sent e-mail correspondence; (iii) filing proof of service or return receipts showing delivery to the defendant, unless the defendant "is actively refusing or rejecting the delivery of the notice or . . . is concealing himself"; and (iv) filing an affidavit of compliance within forty days after the day of service on the Secretary of State or within such time the court allows. Fla. Stat. § 48.161(3). The affidavit of compliance requires a plaintiff to show "due diligence" in his attempt to locate and personally serve the

---

[1] South Shore also cites to *Hernandez*, claiming that Plaintiff's Amended Complaint failed to allege "that the defendant was a non-resident, or a resident of Florida who subsequently became a non-resident, or a resident of Florida concealing his whereabouts." Dkt. 26 at 3 (quoting *Hernandez*, 32 So. 3d at 698). However, pursuant to the recently amended version of section 48.161, "[t]he party effectuating service does not need to allege in its original or amended complaint the facts required to be set forth in the affidavit of compliance." Fla. Stat. § 48.161(3)(b), *amended by* 2025 Fla. Laws ch. 2025-13 (effective October 1, 2025). Since Plaintiff's Amended Complaint was filed on January 22, 2026, the current version of section 48.161 controls. Thus, Plaintiff need not plead that Defendant McCrea-Hinds became a non-resident or is concealing his whereabouts.

party, and "[t]o the extent applicable, the party's nonresidence, or concealment." *Id.* § 48.161(3)(a)–(b).

Here, the purported substitute service is inadequate because Plaintiff failed to comply with the notice requirements. Despite the requirement to "forthwith" send notice of service and a copy of the process to Defendant McCrea-Hinds by registered or certified mail with return receipt requested, Plaintiff has not provided any proof showing this has occurred. *Id.* § 48.161(3); *see* Dkts. 25, 27. Indeed, Plaintiff's notice and status report on the docket neither mentions Fla. Stat. § 48.161 nor makes any effort to demonstrate strict compliance with the requirements under the statute. *See* Dkts. 25, 27. Beyond attaching a copy of the letter from the Florida Secretary of State, there is no showing that counsel for Plaintiff sent a copy of the process to Defendant McCrea-Hinds's last known address or provided proof of service/return receipts showing delivery. *See* Fla. Stat. § 48.161(3). Therefore, Plaintiff's substitute service is not "forthwith" under section 48.161's strict requirements. *See Crystal Springs Partners, Ltd. v. Michael R. Band, P.A.*, 132 So. 3d 1230, 1231 (Fla. 3d DCA 2014) ("[A] certified letter and the requisite copies forty-two days after the Secretary of State was served . . . is not 'forthwith' as we and other courts have interpreted the term."); *Par. Mortg. Corp. v. Davis*, 251 So. 2d 342, 343 (Fla. 3d DCA 1971) (finding that delay of thirty-seven days was not "forthwith").

10

Additionally, an affidavit of compliance showing "due diligence" is a prerequisite for substitute service through the Florida Secretary of State. *See* Fla. Stat. §§ 48.161(3)–(5); *see also InClaim, LLC*, 413 So. 3d at 255–56. The requisite "due diligence" is defined in Fla. Stat. § 48.161(5). *See InClaim, LLC*, 413 So. 3d at 256. While Plaintiff's motion to remand and status report appear to briefly acknowledge the requisite due diligence, Dkt. 11 at 2; Dkt. 27 ¶¶ 1–5, Plaintiff does not demonstrate compliance with any of the statutory requirements for due diligence, including the requirement of filing an affidavit showing "due diligence was exercised" within "40 days after the date of service on the Secretary of State." Fla. Stat. § 48.161(3)(a). The Secretary of State accepted substitute service on March 30, 2026, Dkt. 25 at 3, so the forty-day requirement has since passed without any showing of compliance. The Court declines to rely on Plaintiff's "mere say-so that diligence was exercised" and finds Plaintiff has not shown the requisite due diligence to resort to substitute service. *Popping Bay, LLC v. Veritas Logistics, LLC*, No. 3:26-CV-71-HES-SJH, 2026 WL 765477, at *2 (M.D. Fla. Mar. 18, 2026); *see also Dixon v. Blanc*, 796 F. App'x 684, 687 (11th Cir. 2020) ("[The plaintiff] never filed an affidavit showing that he complied with the statute. Accordingly, the district court did not err in concluding that [the plaintiff] failed to effect proper service through § 48.161."). The lack of an affidavit of compliance setting forth that "due diligence"

11

was exercised means this Court lacks personal jurisdiction over Defendant McCrea-Hinds.

Because the record before the Court unequivocally reflects that the Plaintiff failed to acquire personal jurisdiction over the Defendant by substituted service of process on the Secretary of State of Florida, this Court does not lack diversity jurisdiction. *See Schaer v. Dunn & Phillips, LLC*, No. 8:14-CV-49-T-26TGW, 2014 WL 582936, at *2 (M.D. Fla. Feb. 13, 2014) ("[B]ecause . . . Plaintiff failed to acquire personal jurisdiction over the Defendant by substituted service of process on the Secretary of State of the State of Florida, the removing Defendant's failure to obtain his consent prior to removal does not deprive this Court of diversity jurisdiction."). This conclusion is further reinforced by Plaintiff's attempt to achieve substitute service *after* South Shore removed this case to federal court. *See* Dkt. 25 at 3 (showing acceptance of substitute service from the Secretary of State on March 30, 2026); Dkt. 1 (showing notice of removal on February 23, 2026). Therefore, Plaintiff's motion for remand is denied.[2]

---

[2] There is one outstanding matter to consider. The Court is well aware that 28 U.S.C. § 1446(b) requires the notice of removal to be "filed within 30 days after the receipt" of the initial pleading or summons by Defendant South Shore. 28 U.S.C. § 1446(b). The record is somewhat unclear on when Defendant South Shore first received "a copy of the initial pleading." *Id.* Regardless, Plaintiff's motion to remand and subsequent briefings make no argument as to whether removal was procedurally deficient, so the Court does not explore this matter any further.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff

Proctor's Motion to Remand, Dkt. 11, is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, on May 11, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

13